**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| UNITED STATES, FOR THE USE OF NORMENT SECURITY GROUP, INC.<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>TRAVELERS CASUALTY AND SURETY COMPANY AND CENTEX CONSTRUCTION CO., INC.<br><br>　　　　Defendants. | )<br>)<br>)<br>)<br>)　Case No. 05-CV-01715 (ESH)<br>)<br>)　Judge Ellen Segal Huvelle<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MOTION TO STAY PENDING ARBITRATION

Defendants, Travelers Casualty and Surety Company ("Travelers") and Centex Construction LLC, successor by merger to Centex Construction Co., Inc. ("Centex) (collectively, the "Defendants"), by and through counsel respectfully moves to stay this action pending the completion of pending arbitration proceedings between Norment Security Group, Inc. ("Norment") and PCC Construction Components, Inc. ("PCC"). Norment's claims in this action are dependent upon Norment establishing that PCC is indebted to it. More specifically, Norment was a subcontractor to PCC on the E. Barrett Prettyman Courthouse Annex Project. In turn, PCC was a subcontractor to Centex, and Travelers was Centex's payment bond surety. Norment's entitlement to pursue payment form Centex and/or Travelers depends upon Norment's entitlement to payment from PCC. That entitlement issue is the subject of an arbitration between PCC and Norment. Therefore, as described more fully in the attached

Memorandum of Points and Authorities, a stay pending conclusion of the PCC/Norment arbitration is appropriate.

In accordance with LCvR 7.1(m), Defendants contacted counsel for Norment to determine if there would be opposition to the requested relief. Based on that discussion, Defendants understand that Norment intends to oppose the requested relief.

Respectfully submitted,

THELEN REID & PRIEST LLP

By:         /s/
Michael Evan Jaffe (Bar # 88443)
Todd J. Wagnon  (Bar # 464287)
701 8th Street, N.W.
Washington, DC  20001
Ph:  (202) 508-4000
Fax:  (202) 508-4321
mjaffe@thelenreid.com
twagnon@thelenreid.com

Attorneys for Defendants
Centex Construction, LLC and
Travelers Casualty and Surety Co.

Date:  October 11, 2005

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES, FOR THE USE OF NORMENT SECURITY GROUP, INC. ) ) ) ) Plaintiff, ) ) vs. ) ) TRAVELERS CASUALTY AND SURETY ) COMPANY AND CENTEX CONSTRUCTION ) CO., INC. ) ) Defendants. ) ) | Case No. 05-CV-01715 (ESH) Judge Ellen Segal Huvelle |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**
**OF MOTION TO STAY PENDING ARBITRATION**

Defendants, Travelers Casualty and Surety Company ("Travelers") and Centex Construction LLC, successor by merger to Centex Construction Co., Inc. ("Centex) (collectively, the "Defendants"), by and through counsel, Thelen Reid & Priest LLP, hereby submit this Memorandum of Points and Authorities in Support of their Motion to Stay Pending Arbitration.

**PRELIMINARY STATEMENT**

Centex is the prime contractor with the United States government, through the General Services Administration, for the construction of the E. Barrett Prettyman Courthouse Annex in the District of Columbia (the "Project"). Centex obtained a Payment Bond written by Travelers for the benefit of project subcontractors and materialmen as required by the Miller Act, 40 U.S.C. §1331 *et seq.* In carrying out the work on the Project, Centex entered into a subcontract with PCC Construction Components, Inc. ("PCC") on March 15, 2002 for the supply and installation of glass and glazing on the Project. PCC in turn entered into a second-tier

subcontract with Plaintiff, Norment Security Group, Inc. ("Norment") to supply windows for the Project.

The second-tier subcontract between Norment and PCC contains an arbitration clause for the resolution of disputes. Norment, as provided in its contract with PCC, demanded arbitration against PCC seeking the amounts allegedly owed under the second-tier subcontract. After it began the arbitration, Norment filed the present lawsuit alleging that PCC has failed to pay Norment amounts due under its second-tier subcontract, and seeking payment of those amounts under the Payment Bond or under a theory of quantum meruit against Centex. Norment does not allege, nor is there, any contractual privity between Norment and Centex. Norment also does not allege any amounts are owed other than those arising out of PCC's failure to pay Norment under the second-tier subcontract between Norment and PCC.

While Norment's lawsuit may be necessary to preserve its rights under the Miller Act and the Payment Bond, it does not serve the Court's or any parties' interests to litigate Norment's rights under the second-tier subcontract in this Court concurrently with the adjudication of those same rights in the arbitration proceeding. Defendants request that this lawsuit be stayed until the conclusion of the pending arbitration.

A stay of this lawsuit not only serves the interests of judicial economy, but it also serves the Federal policy embodied in the Federal Arbitration Act, 9 U.S.C. §1, *et seq.*, favoring arbitration as a means of resolving disputes.

## ARGUMENT

I. **Defendants can seek a stay under Section 3 of the Federal Arbitration Act and in consideration of the Court's inherent power to control its docket.**

The arbitration between PCC and Norment described above is subject to the Federal Arbitration Act (the "FAA"), 9 U.S.C. §1, *et seq.*, because the arbitration agreement is

part of a contract evidencing a transaction involving interstate commerce. *See* 9 U.S.C. §2. Norment's principal place of business is in Montgomery, Alabama, and PCC's principal place of business is in Gaithersburg, Maryland, and the work under the agreement between them is to be performed in the District of Columbia.

Section 3 of the FAA gives Federal courts the authority to stay a suit involving matters referable to arbitration. This provision specifically provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement.

9 U.S.C. §3.

Typically, the party seeking the stay pursuant to Section 3 of the FAA is a party to the arbitration agreement, but in this instance, neither defendant is a party to that arbitration agreement. In conjunction with considerations of judicial economy, however, a non-party to the agreement may seek a stay of a matter referable to arbitration as long as the lawsuit is based on the same issues referable to arbitration under an agreement governed by the FAA. *Armco Steel Co., LP v. CSX Corp, et al.*, 790 F. Supp. 311, 316 (D.D.C. 1991). This Court also has the authority to grant the stay under its inherent power to control its docket. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 n. 23 (1983). Thus, Defendants may seek a stay of this action because the arbitration concerns common questions of fact with this lawsuit – namely whether Norment is owed the claimed amounts under the second-tier subcontract between Norment and PCC. *See Armco Steel*, 790 F. Supp. at 316.

**II.     A stay pending arbitration is appropriate in cases involving the Miller Act.**

In *United States for the Use and Benefit of Capolino Sons, Inc. v. Electronic & Missile Facilities, Inc.*, 364 F.2d 705 (2nd Cir. 1966), the court explained the balance between upholding an arbitration provision pursuant to the FAA and maintaining a subcontractor's Miller Act rights as follows:

> First, it is quite clear that there is no explicit inconsistency between the provisions of the Miller Act and the provisions of the United States Arbitration Act. 9 U.S.C. §§1-14. <u>Certainly both acts can apply simultaneously to situations like that now before us.</u> Though a materialman like appellant would otherwise be free, pursuant to Section 2(a) of the Miller Act, if he were not paid within ninety days after the last material had been furnished, to sue the prime contractor and the surety on the contractor's payment bond, <u>there is no inconsistency in requiring that an arbitration precede resort to the courts if the materialman and the contractor had previously agreed to arbitrate disputes. Pending the arbitration a materialman could protect against the running of the one year statute of limitations found in Section 2(b) of the Miller Act by filing a protection suit, and the complaint could later be amended in the light of the arbitration award.</u>

*Id.* at 706-07 (emphasis added).

Numerous cases have held that an arbitration agreement will be upheld even though there is also Miller Act jurisdiction over the matter, and that the suit brought in Federal court under the Miller Act should be stayed pending the outcome of the arbitration. *United States for the Use and Benefit of MPA Construction, Inc. v. XL Specialty Ins. Co.*, 349 F. Supp.2d 934, 940 (D. Md. 2004) (citing *American Home Assurance Co. v. Vecco Concrete Constr. Co.*, 629 F.2d 961, 964 (4th Cir. 1980)); *See also United States for Use and Benefit of Ray Gains, Inc. v. Essential Construction, Co. et al.*, 261 F. Supp. 715, 721 (D. Md. 1966) (citing *United States for Use and Benefit of Air-Con, Inc. v. Al-Con Dev. Corp.*, 271 F.2d 904 (4th Cir. 1959); *United States for the Use and Benefit of Capolino Sons, Inc. v. Electronic & Missile Facilities, Inc.*, 364 F.2d 705 (2nd Cir. 1966)).

The recently decided case of *United States for Use and Benefit of Tanner v. Daco Construction, Inc.*, 38 F. Supp.2d 1299 (N.D. Okla. 1999), is instructive. In *Tanner*, the subcontractor initiated litigation in Federal court asserting claims of quantum meruit and unjust enrichment against the contractor, and a Miller Act claim against the contractor's bond. The parties' subcontract required them to arbitrate their disputes, but not the Miller Act claim. The contractor moved the Federal court to stay the Miller Act claim and to enforce arbitration of the other claims. In staying the Miller Act claim while the underlying dispute was arbitrated, the court explained that a contrary ruling would eviscerate the arbitration provision and undermine the goal of judicial efficiency:

> In this matter, the subcontractor explicitly agreed to arbitrate its claims against the prime contractor (paragraph 6.1), while reserving its right to litigate against the surety (paragraph 6.5). <u>The prudent way to reconcile this inconsistency in the two clauses is to assume that Tanner agreed to arbitrate the underlying dispute against Daco, while reserving its right to sue [the Surety] in the event Daco refused to pay an arbitration award in favor of Tanner…. Granting a stay in this situation fosters judicial efficiency.</u>
>
> If, on the other hand, the Court were to deny defendants' motion to stay, the arbitration mandate of paragraph 6.1 in the subcontract would be rendered meaningless, and in every public works project where the subcontractor agrees to a similar clause, the subcontractor could circumvent the arbitration provision be suing the surety. <u>It seems grossly inefficient to have the parties arbitrate and litigate at the same time or bear unnecessary expense and the risk of inconsistent results.</u>

*Id.* at 1305-06 (emphasis added).

While *Tanner* did not involve a Miller Act claim by a second-tier subcontractor against the prime contractor, the reasoning used in that case applies with equal force to this case. As set forth above, Norment initiated arbitration against PCC for breach of the second-tier subcontract seeking amounts owed under that agreement. Norment then filed the present action against Centex and Travelers seeking the same amounts as it claims is owed it under the second-

tier subcontract with PCC. Even a cursory review of Norment's Complaint reveals that its Miller Act claim is derivative of its claim against PCC that is the subject of the pending arbitration. *See e.g.,* Compl. ¶9 ("Norment supplied the windows for the Project but has not been fully paid <u>by PCC</u> for the windows and associated work." (emphasis added)); Compl. ¶10 ("Norment performed the Change Order work but has not been paid <u>by PCC</u> for the work." (emphasis added)). Both the Norment/PCC arbitration and this lawsuit relate solely to Norment's entitlement to the amounts allegedly owed under the second-tier subcontract. The arbitrators in the arbitration will inevitably determine whether Norment is entitlement to some or all of the amounts allegedly owed under the second-tier subcontract.

Norment's claim for the alleged unpaid amounts must first be resolved pursuant to the arbitration agreement between Norment and PCC. Allowing this lawsuit to proceed concurrently with the arbitration enables Norment to circumvent the dispute resolution process it agreed upon in the second-tier subcontract with PCC. This lawsuit also creates a significant burden on Centex because it must respond to claims involving a contract to which it is not a party. Moreover, to the extent Norment has any rights of recovery, arbitration of Norment's claim with PCC may ultimately nullify or reduce Norment's right of recovery in this lawsuit. Indeed, the arbitration may render Norment's Miller Act claim moot because it may not prevail, and even assuming a favorable award to Norment, it would only need to resort to recovery in this lawsuit under the Miller Act if PCC fails to pay that arbitration award. *See Electronic & Missile Facilities, Inc.*, 364 F.2d at 706-07. Thus, the Court should stay this lawsuit pending the arbitration where Norment's claims can be adjudicated per the arbitration agreement between Norment and PCC.

## CONCLUSION

The interests of judicial efficiency and the policy favoring arbitration support the granting of a stay to allow the underlying dispute between Norment and PCC to be arbitrated in accordance with their arbitration agreement. Anything less than a stay of this lawsuit would cause the parties to this lawsuit and the Court to expend resources and to incur expenses of litigation unnecessarily, and would also allow Norment to circumvent the arbitration agreement between Norment and PCC.

                      Respectfully submitted,

                      THELEN REID & PRIEST LLP

By:       /s/
      Michael Evan Jaffe (Bar # 88443)
      Todd J. Wagnon  (Bar # 464287)
      701 8th Street, N.W.
      Washington, DC  20001
      Ph:  (202) 508-4000
      Fax:  (202) 508-4321
      mjaffe@thelenreid.com
      twagnon@thelenreid.com

      Attorneys for Defendants
      Centex Construction, LLC and
      Travelers Casualty and Surety Co.

Date:  October 11, 2005