UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES, FOR THE USE OF<br>NORMENT SECURITY GROUP, INC.<br><br>      Plaintiff/Counterclaim Defendant,<br><br>vs.<br><br>TRAVELERS CASUALTY AND SURETY<br>COMPANY AND CENTEX<br>CONSTRUCTION CO., INC.<br><br>      Defendant/Counterclaimant. | Case No. 05-CV-01715 (JMF) |
| PCC CONSTRUCTION<br>COMPONENTS, INC.<br><br>      Plaintiff,<br><br>vs.<br><br>ARCH INSURANCE CO.,<br><br>      Defendant. | Civil Action No. 06-CV-1085 (JMF) |

**CENTEX CONSTRUCTION LLC'S REPLY BRIEF
IN FURTHER SUPPORT OF MOTION TO CONSOLIDATE**

Centex Construction, LLC, successor by merger to Centex Construction Co., Inc. ("Centex"), by and through counsel, Thelen Reid & Priest LLP, respectfully submits this reply brief in further support of its motion to consolidate.[1]

---

[1] PCC states that Centex did not ask PCC or PCC's counsel for PCC's position regarding the motion to consolidate. Centex's counsel discussed consolidation with Norment's and PCC's counsel on September 18, 2006 during a break at the deposition of Bryan Frady. In that discussion, PCC's counsel made it clear that PCC would oppose consolidation, thereby necessitating the motion to consolidate.

I.   **INTRODUCTION**

Centex's motion to consolidate sets forth as grounds for the consolidation that both lawsuits involve disputes regarding inter-related payment and contractual obligations in the contract chain among Centex as the prime contractor, PCC Construction Components, Inc. ("PCC") as a subcontractor to Centex, and Norment Security Group, Inc. ("Norment"), as a subcontractor to PCC. PCC's opposition states that the only common fact is that the parties worked on the same project. PCC's position, however, has no basis in reality.

In regards to the common facts and law, Norment's claims asserted in the lawsuit against Centex under the Miller Act ("Norment Lawsuit") are for amounts that PCC allegedly failed to pay Norment under the PCC-Norment subcontract. Because PCC also owed an obligation to Centex to pay its lower-tier subcontractors, Norment's claims in the Norment Lawsuit relate directly to PCC's failure to perform in accordance with not only its obligations to Norment, but also to Centex. Moreover, PCC's claims against Norment's surety, Arch Insurance Company, ("PCC Lawsuit") would offset and potentially completely dispose of Norment's claims in the Norment Lawsuit. As such, there are common issues of fact and law in the two lawsuits making them appropriate for consolidation.[2]

PCC also asserts that Centex's reference to PCC's position on consolidation is very misleading. That is not correct. The fact is that PCC had been in support of consolidation of all actions involving these parties, as evidenced by its statements to the U.S. District Court for the District of Maryland quoted in Centex's motion to consolidate. (See Centex's Motion to Consolidate, at n.1).

---

[2] Also incorrect is PCC's assertion that discovery has closed in Norment's lawsuit against Centex. In fact at the conference at which these cases were referred to a Magistrate Judge, the Court left scheduling in both cases to the to be assigned Magistrate Judge.

II.  **ARGUMENT**

1.  **Norment's Claims Against Centex/Travelers Involve PCC And Are Not Pass-Through Claims**

In its opposition, PCC states that Norment's claims against PCC are pass-through claims to Centex such that they do not involve PCC and should properly be pursued directly against Centex. Again, PCC is not correct. A substantial portion of Norment's claims against Centex and Travelers in the Norment Lawsuit are for PCC's alleged failure to pay Norment amounts due under the PCC-Norment subcontract. The alleged unpaid balance on the subcontract is not a pass-through claim, and PCC's failure to pay Norment would be a breach of PCC's obligations to Centex. Moreover, Norment's claims for extra work above the unpaid contract balance are not pass-through claims. If Norment demonstrates entitlement to its extra work claims, Centex has claims against PCC on the basis that Norment's increased costs are the result of PCC's failure to coordinate all of the work within the scope of its subcontract (including the work that PCC subcontracted to Norment) with the other trades employed by Centex. Norment claims that its losses were the result of a lack of coordination between Norment's work and Modern Mosaic's precast work. That failure of coordination, if proved by Norment, would be a failure by PCC, for which it would be responsible to Centex.

2.  **The Procedural History and the Nature of the Claims Among the Parties Demonstrate the Appropriateness of the Consolidation of the Two Lawsuits at This Time**

When Norment filed the Norment Lawsuit against Centex and Travelers, PCC was not named as a party. There was no reason to add PCC as a third-party in that suit because concurrent with the Norment Lawsuit, PCC and Norment were engaged in an arbitration ("PCC-Norment Arbitration") to resolve claims between them arising out of the Project. The issues in the arbitration included the contract amounts that Norment claimed PCC failed to pay under the

PCC/Norment subcontract. Norment was also seeking those alleged unpaid amounts from Centex and Travelers in the Norment Lawsuit. If PCC prevailed in the arbitration, or if Norment prevailed and PCC paid the award, there would be no claim to litigate against Centex or its surety, Travelers.

While PCC and Norment proceeded to arbitrate their claims *inter se*, the Norment Lawsuit became dormant because the expectation was that PCC and Norment would reach a final resolution of the claims through the arbitration proceeding. However, PCC and Norment did not arbitrate to a decision, and that changed the landscape for the Norment Lawsuit.

In June 2006, PCC and Norment reached an accommodation in the form of a Consent Award for the PCC-Norment Arbitration. (See Exhibit 5 to PCC's Opposition to Motion to Consolidate). In that Consent Award, PCC acknowledged that it did not pay Norment $432,187.11 owed as part of the contract price under the PCC/Norment Subcontract and $64,302.86 for extra work authorized by PCC. (See *id.* at ¶10). Contrary to PCC's statement in its opposition, the Consent Award did not resolve Norment's claims against PCC because PCC and Norment agreed that Norment would not pursue collection from PCC before exhausting its claims and recoveries against Centex and/or Travelers in the Norment Lawsuit.

As a result of this maneuver, the PCC-Norment Arbitration did not result in a final resolution, and the Norment Lawsuit became the focus of Norment's efforts to seek recovery of the claims first asserted against PCC. To the extent that Centex has any liability to Norment on its claims, Centex in turn has numerous causes of action against PCC associated with its failure to pay Norment. Centex has filed a motion for leave to file those claims either in a consolidated action or as a third party claim in the Norment Lawsuit.

Additionally, the PCC-Norment Arbitration did not resolve PCC's claims against Norment. PCC elected to pursue those claims, not against Norment directly in the PCC-Norment Arbitration, but in the PCC Lawsuit against Arch Insurance Company. Notably, PCC's claims in the PCC Lawsuit would offset and potentially completely dispose of Norment's claims in the Norment Lawsuit. The PCC Lawsuit was originally pending in the U.S. District Court for the District of Maryland, but upon PCC's motion venue was transferred to this Court by order dated June 12, 2006. PCC's opposition fails to explain why, on the one hand, it would request the transfer of venue to this Court, but, on the other hand, now take the position that the two cases should not be consolidated. The only logical purpose for transferring venue would be to facilitate the consolidation of the PCC Lawsuit with the Norment Lawsuit.

### III. CONCLUSION

As described above, Centex has demonstrated that there are common issues of fact and law between the two lawsuits so that consolidation is appropriate and serves the interest of justice and judicial economy. Accordingly, Centex's motion to consolidate should be granted.

Dated: October 18, 2006

Respectfully submitted,

THELEN REID & PRIEST LLP

By:     /s/ Michael Evan Jaffe
Michael Evan Jaffe (Bar # 88443)
Todd J. Wagnon (Bar # 464287)
701 Eighth Street, N.W.
Washington, D.C. 20001
Telephone: (202) 508-4215
Facsimile: (202) 654-1828
mjaffe@thelenreid.com
twagnon@thelenreid.com

Attorneys for Defendant/Counterclaimant
Centex Construction, LLC, successor by merger to
Centex Construction Co., Inc.

DC #241375 v3

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of October 2006, a true and correct copy of the foregoing Centex Construction, LLC's Reply Brief in Further Support of Motion to Consolidate was served via CM/ECF electronic delivery and e-mail upon:

| | |
|---|---|
| Marvin H. Campbell, Esquire<br>Law Offices of Marvin H. Campbell<br>P.O. Box 4979<br>Montgomery, AL 36103<br>mhcfirm@aol.com | Rick Claxton<br>Garson Claxton LLC<br>7910 Woodmont Avenue, Suite 650<br>Bethesda, Maryland 20814<br>rclaxton@garsonlaw.com |
| Richard E. Hagerty<br>Troutman Sanders LLP<br>1660 International Dr., Suite 600<br>McLean, VA 22102<br>Richard.hagerty@troutmansanders.com | Tameka M. Collier<br>Troutman Sanders LLP<br>401 9th Street, NW<br>Suite 1000<br>Washington, DC 20004<br>Tameka.collier@troutmansanders.com |

and by e-mail and first-class mail, postage prepaid, upon:

| | |
|---|---|
| Leonard A. Sacks<br>Leonard A. Sacks & Assocs., P.C.<br>One Church Street<br>Suite 303<br>Rockville, MD 20850<br>lsacks@laspc.net | Jane S. Dudley<br>Whiteford, Taylor & Preston LLP<br>1025 Connecticut Ave., NW<br>Suite 400<br>Washington, DC 20036<br>jdudley@wtplaw.com |

                                                /s/ Michael Evan Jaffe
                                                Michael Evan Jaffe