**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES, FOR THE USE OF NORMENT SECURITY GROUP, INC.<br><br>　　　　Plaintiff/Counterclaim Defendant,<br><br>vs.<br><br>TRAVELERS CASUALTY AND SURETY COMPANY AND CENTEX CONSTRUCTION CO., INC.<br><br>　　　　Defendant/Counterclaimant. | Case No. 05-CV-01715 (JMF) |
| CENTEX CONSTRUCTION LLC<br><br>　　　　Third-Party Plaintiff,<br><br>vs.<br><br>PCC CONSTRUCTION COMPONENTS, INC.<br><br>　　　　Third-Party Defendant. | |
| PCC CONSTRUCTION COMPONENTS, INC.<br><br>　　　　Plaintiff,<br><br>vs.<br><br>ARCH INSURANCE CO.,<br><br>　　　　Defendant. | Civil Action No. 06-CV-1085 (JMF) |

**MEMORANDUM IN OPPOSITION TO PCC CONSTRUCTION
<u>COMPONENTS, INC.'S MOTION TO DISMISS</u>**

Centex Construction LLC ("Centex") respectfully submits this memorandum in opposition to PCC Construction Components, Inc.'s ("PCC") Motion to Dismiss Counts II, III and IV of Centex's Third-Party Complaint.

## I. INTRODUCTION

Centex was the prime contractor for the construction of the E. Barrett Prettyman Courthouse Annex in Washington, D.C. (the "Project"). Centex entered into a subcontract with PCC for the supply and installation of glass and glazing on the Project. Norment Security Group, Inc. ("Norment") in turn supplied blast-resistant windows to PCC, and Norment filed a lawsuit pursuant to the Miller Act against the payment bond surety and Centex alleging that PCC has failed to pay Norment amounts due under the PCC-Norment subcontract. PCC has acknowledged that it did not pay Norment $432,187 for the remaining contract balance and $64,303 for agreed extra work, but through an arrangement between Norment and PCC, Norment agreed to pursue collection of those amounts in its Miller Act lawsuit.

Centex has asserted claims against PCC for contractual indemnification (Count I) for its failure to pay Norment and breach of contract (Count V) for, *inter alia*, its failure to coordinate its work and the work of Norment with Centex and other trades on the Project. PCC does not seek dismissal of Counts I and V.

At issue for purposes of PCC's motion to dismiss are Centex's separate claims against PCC for its fraud (Count II) and negligent misrepresentation (Count III) relating to the signed certification on its payment applications that PCC had paid all lower-tier subcontractors for work covered by previous payment applications. PCC also seeks dismissal of Count IV for unjust enrichment on the grounds that there is an express contract among the parties. Because PCC has agreed that there is an express contract, Centex does not dispute that Count IV is now moot.

PCC seeks dismissal of Counts II and III on the basis that Centex has not pled those counts with adequate particularity and that Centex cannot maintain those tort claims in addition to a claim for breach of contract. As described in detail below, PCC's arguments in regards to dismissal of Counts II and III are wholly without merit.

**II.  ARGUMENT**

    **1.  Centex's Fraud and Negligent Misrepresentation Counts Are Pled With Adequate Particularity**

Federal Rule of Civil Procedure 9(b) requires that allegations concerning the circumstances constituting fraud must be stated "with particularity" and that allegations of malice, intent, knowledge, and other condition of mind may be averred generally. PCC argues that Centex failed to plead the allegations in Count II and III with particularity.

To evaluate whether a complaint satisfies the particularity requirement of Rule 9(b), the Court must read that rule in combination with Federal Rule of Civil Procedure 8(a) that requires only a short and plain statement of the claim. *United States ex rel. McCready, M.D. v. Columbia/HCA Healthcare Corp., et al.*, 251 F. Supp.2d 114, 116 (D.D.C. 2003). In this context, the court should be reluctant to dismiss a complaint under Rule 9(b) "if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Id.* (citing *Harrison, U.S. v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999)). This Court should not dismiss Counts II and III of Centex's claim against PCC because the allegations satisfy this standard.

First, Centex has pled its fraud and negligent misrepresentation counts with adequate detail so that PCC is aware of the particular circumstances surrounding the fraud and negligent misrepresentation. Counts II and III of Centex' claim are not based on information and belief,

and they do not contain vague, conclusory allegations that PCC committed fraud or negligent misrepresentation. Rather, the allegations recount the specific facts related to PCC's fraud and negligent misrepresentation. Centex alleges the fact that PCC invoiced Centex for work performed by Norment but failed to pay all amounts to Norment upon receiving payment from Centex. (Claim Against PCC Construction Components, Inc. ("Claim"), ¶14). Furthermore, the specific fraudulent or negligent misrepresentation in regards to payments to Norment is quoted from the signed certification in PCC's payment applications that, "all amounts have been paid by [PCC] for Work for which previous Certificates for Payment were issued and payments received." (Claim, ¶15). Centex in turn relied upon the misrepresentation in PCC's payment applications in making further payments to PCC. (Claim, ¶18).

Based on these allegations, Centex has made PCC aware that the fraud and negligent misrepresentation counts are confined to PCC's failure to pay Norment amounts received from Centex and PCC's signed certifications on subsequent payment applications that it had done so. As a result, PCC has adequate information to prepare a defense on these counts at trial: it knows the particular circumstances surrounding the fraud and negligent misrepresentation.

The court should also be satisfied that Centex has substantial prediscovery evidence of the facts surrounding PCC's fraud and negligent misrepresentation. PCC has acknowledged in an Agreement for Consent Award and Mutual Partial Release between PCC and Norment that it did not pay Norment $432,187 for the remaining contract balance and $64,303 for agreed extra work. (Claim, ¶5). And, Centex knows that it has paid PCC under their subcontract for Norment's work, including the amounts that PCC now admits went unpaid to Norment. Also, Centex has PCC's payment applications in which it certified <u>under oath</u> that it had paid Norment the monies that it now admits it did not pay.

The crux of PCC's argument is that Centex did not state the time, place and content of the fraud with sufficient particularity. In regards to the content of the fraud, Centex's allegations could not be stated with any more particularity. Centex quotes precisely the misrepresentation that it relied upon and that forms the basis of its claims for fraud and negligent misrepresentation. (Claim, ¶15). With respect to the time and place of the fraud and negligent misrepresentation, Centex identifies that the statements were made by PCC in its payment applications to Centex – making explicit the time and place of the fraud.

PCC's only challenge in this regard seems to be that Centex should have identified in its allegations the dates of the individual payment applications and who signed the certification. PCC's position, if accepted, would carry the particularity requirement to an absurd extreme. PCC well knows when it submitted the applications and who signed the applications. In short, there is no basis for PCC's suggestion that there is insufficient detail to allow it to respond meaningfully to Centex's claim.

By specifying in the allegations that the fraud and negligent misrepresentation arise out of PCC's payment applications, Centex's allegations inform PCC that Centex's claims are based entirely on PCC's signed payment applications as opposed to statements made in a letter, at a meeting, or otherwise. This information in turn narrows the relevant dates and identifies the persons involved because it would be the person(s) who signed the certification in the payment applications. In short, the content of Centex's allegations is entirely consistent with the view that the Rule 9(b) particularity requirement is read in combination with the Rule 8(a) requirement of a short and plain statement of the claim. *McCready,* 51 F. Supp.2d at 116.

For purposes of comparison, the court in *United States ex rel. Harrison v. Westinghouse Savannah River Co.*, 352 F.3d 908 (4th Cir. 2003) quoted in the opinion, the relevant fraud

allegations that it found were stated with sufficient particularity to satisfy Rule 9(b). *Id.* at 921-22. The allegations in *Harrison* were:

> (1) GPC requested and received insider information from Smith that was not provided to other bidders in violation of DOE regulations;
>
> (2) Westinghouse misrepresented to DOE that its requisition process had been duly followed when Westinghouse knew that such representation was false because GPC had received insider information during the procurement process;
>
> (3) Westinghouse was required under DOE regulations to obtain from GPC a certification relating to OCIs;
>
> (4) Westinghouse knowingly permitted GPC to engage in undisclosed OCIs that gave GPC a competitive advantage;  and
>
> (5) Westinghouse knew about GPC's OCI, which gave GPC a competitive advantage over the other bidders, but failed to disclose the OCI to DOE when it submitted GPC's false no-OCI certification to DOE.

*Id.* at 921-22. Centex submits that the detail of Centex's allegations in Counts II and III is greater than the level of particularity approved in *Harrison*. Centex has pled the allegations of fraud and negligent misrepresentation in this case with sufficient particularity to satisfy Rule 9(b).[1]

### 2.    Centex's Fraud and Negligent Misrepresentation Counts Are Not Duplicative of its Breach of Contract Claim

PCC argues that Centex's fraud and negligent misrepresentation counts should be dismissed because these tort claims are duplicative of the breach of contract claims. The tort counts should not be dismissed, however, because they represent claims for relief that are separate from breach of contract. *Calvetti v. Antcliff*, 346 F. Supp.2d 92, 101 (D.D.C. 2004). In

---

[1] Moreover, the failure to plead fraud with particularity is not a basis to dismiss the claims with prejudice and leave to amend is "almost always" allowed to cure deficiencies in pleading fraud. *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996).  The only reason leave to amend should not be granted is in instances of undue delay, bad faith or repeated failure to cure deficiencies by previous amendment. *Id.* (citing *Foman v.* Davis, 371 U.S. 178, 182 (1962)).  None of those circumstances are applicable in this case.  Thus, if the Court agrees that Centex did not plead its fraud and negligent misrepresentations counts with adequate particularity, the Court should allow Centex to file a motion for leave to amend its claims under Fed. R. Civ. P. 15(a) along with an amended complaint that cures any deficiencies in the pleading of the fraud and negligent misrepresentation counts.

*Calvetti*, the plaintiffs entered into a contract with one of the defendants, David Antcliff, for renovations on two properties in the District of Columbia. *Id.* at 97. Per the contract, Mr. Antcliff was required to provide receipts to verify the payments made for work performed on the renovations. *Id.* The plaintiffs filed suit for both fraud and breach of contract alleging that they advanced Mr. Antcliff over $160,000 for renovations that were never completed. *Id.* at 97-98.

Similar to the argument asserted in the present case, Mr. Antcliff sought judgment in his favor on the basis that the plaintiff failed to assert a breach of an independent common law duty separate from the alleged contractual agreement and that the mere failure to perform a contractual duty is not an actionable tort. *Id.* at 101. The court rejected that argument and distinguished between the breach of contract and fraud counts:

> Here, the alleged breach of contract is the Antcliffs' failure to complete the work as it was allegedly agreed to in the contract. Compl. ¶¶ 54-59. On the other hand, the cause of action for fraud is based upon the alleged fraudulent misrepresentation that were made concerning expenses and invoices for the projects. *Id.* ¶¶ 48-53. <u>While many of the facts underlying these two claims are interrelated, they are two distinct claims for relief</u>. Thus, David Antcliff's motion to dismiss the plaintiffs' fraud claim must be denied.

*Id.* (emphasis added).

The holding of *Calvetti* is directly applicable here. As in *Calvetti*, Centex has alleged both breach of contract for failure to satisfy contractual obligations and for fraud and negligent misrepresentation. Centex's breach of contract allegations are that PCC failed to adhere to the terms of the Centex-PCC subcontract with respect to the payment of PCC's subcontractors. In other words, PCC failed to perform its contractual obligations as promised. On the other hand, Centex's fraud and negligent misrepresentation allegations arise out of PCC's misrepresentations of present facts in its payment applications concerning the status of its payments to Norment. These allegations are exactly like the fraudulent misrepresentations concerning expenses and

invoices in *Calvetti*. Per the holding in *Calvetti*, the fraud and negligent misrepresentations counts are separate from the breach of contract claims, and Centex is entitled to pursue both claims for relief.

PCC relies exclusively on *Regency Communications Inc. v. Cleartel Communications Inc.*, 160 F. Supp.2d 36 (D.D.C. 2001) for its position that Centex's fraud and negligent misrepresentation counts cannot stand together with its breach of contract claim.[2] PCC argues that in order to maintain the fraud claims in addition to the breach of contract claims, Centex must either: 1) demonstrate a legal duty separate from the duty to perform under the contract; 2) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or 3) seek special damages caused by the misrepresentation that are unrecoverable as contract damages. *Id.* at 42.

In this case, PCC had a legal duty to be truthful in the payment applications regarding, *inter alia*, the facts relating to the status of its payments to Norment. That duty was separate from its contractual duty to pay Norment. *Calvetti*, 346 F. Supp.2d at 101. Moreover, the imposition of a common law duty not to commit fraud is widely recognized as an independent duty. For example, in *Virginia Military Equip. Corp. v. David B. Finestone Co., Inc.*, 6 F. Supp.2d 488, 493-94 (E.D. Va. 1997), the court imposed a duty on a contracting party not to commit fraud and held that the violation of that duty was actionable as a tort and not merely as a breach of contract. *See also Hewlette v. Hovis*, 318 F. Supp.2d 332, 337 (E.D. Va. 2004) ("The duty not to defraud is owed by everyone to everyone, regardless of any special relationship between the alleged tortfeasor and victim."). In addition to the general duty not commit fraud,

---

[2] The analysis of this issue in *Regency* is based on factors taken from *Bridgestone/Firestone v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2nd Cir. 1996) that was decided under New York law. New York law proscribes tort claims for a party's fraudulent statements made in connection with its performance of a contract. *See Reuben H. Donnelley Corp. v. Mark I Mktg. Corp.*, 893 F. Supp. 285, 290 (S.D.N.Y. 1995) (citations omitted). In the District of Columbia, there is no such prohibition. *Calvetti*, 346 F. Supp.2d at 101.

PCC was under a heightened duty because the certification in the payment applications are notarized and sworn under oath.  *Cf. Adkins v. Mid-America Growers, Inc.*, 141 F.R.D. 466, 469 (N.D. Il. 1992)("What separates affidavits from simple statements is the certification. The requirement is not a trivial one for it subjects the affiant to perjury penalties if falsely made.").  Accordingly, even under the factors described in *Regency*, Centex should be permitted to pursue the tort claims along with the breach of contract claims.

### III.     CONCLUSION

Centex respectfully requests that the Court deny PCC's motion to dismiss Counts II and III pursuant to Federal Rule of Civil Procedure 12(b)(6).  Centex has satisfied the requirements of Federal Rule of Civil Procedure 9(b) in that it has pled the allegations of fraud and negligent misrepresentation with more than adequate particularity.  The allegations well inform PCC of the particular circumstances surrounding the fraud and negligent misrepresentation claims.  In addition, Centex's fraud and negligent misrepresentation claims are separate and apart from the breach of contract claim.  Under the rule in *Calvetti* and wisely recognized jurisprudence, Centex is entitled to pursue both claims for relief.

Date:  November 29, 2006               Respectfully submitted,

                                        THELEN REID & PRIEST LLP

                                By:         /s/ Todd Wagnon
                                        Michael Evan Jaffe (Bar # 88443)
                                        Todd J. Wagnon  (Bar # 464287)
                                        701 8th Street, N.W.
                                        Washington, DC  20001
                                        Ph:  (202) 508-4000
                                        Fax:  (202) 508-4321
                                        mjaffe@thelenreid.com
                                        twagnon@thelenreid.com

                                        Attorneys for Centex Construction, LLC,
                                        successor by merger to Centex Construction Co., Inc.