**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| UNITED STATES, FOR THE USE OF NORMENT SECURITY GROUP, INC.<br><br>      Plaintiff/Counterclaim Defendant,<br><br>vs.<br><br>TRAVELERS CASUALTY AND SURETY COMPANY AND CENTEX CONSTRUCTION CO., INC.<br><br>      Defendant/Counterclaimant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Case No. 05-CV-01715 (JMF) |
| CENTEX CONSTRUCTION LLC<br><br>      Third-Party Plaintiff/<br>      Counterclaim Defendant,<br><br>vs.<br><br>PCC CONSTRUCTION COMPONENTS, INC.<br><br>      Third-Party Defendant/<br>      Counterclaimant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| PCC CONSTRUCTION COMPONENTS, INC.<br><br>      Plaintiff,<br><br>vs.<br><br>ARCH INSURANCE CO.,<br><br>      Defendant. | )<br>)<br>)<br>)<br>)   Civil Action No. 06-CV-1085 (JMF)<br>)<br>)<br>)<br>)<br>)<br>) |

**CENTEX CONSTRUCTION LLC'S**
**<u>MOTION TO STAY COUNT III OF PCC'S COUNTERCLAIM</u>**

DC #267669 v7

Centex Construction LLC, successor by merger to Centex Construction Co., Inc. ("Centex"), by and through undersigned counsel, respectfully moves the Court to stay Count III of PCC Construction Component, Inc.'s ("PCC") Counterclaim Against Centex.

PCC is required by the terms of its subcontract with Centex to wait until the dispute resolution procedures with the GSA have been exhausted before it can assert Count III against Centex in this lawsuit. Accordingly, as described more fully in the attached Memorandum of Law, the Court should exercise its inherent power to control its docket to stay Count III of PCC's Counterclaim.

Per Local Rule 7.1(m), Centex contacted PCC's counsel seeking its consent to a stay of Count III before filing this motion. The parties were unable to reach an agreement, and PCC opposes the stay of Count III.

Date: February 12, 2007

Respectfully submitted,

THELEN REID & PRIEST LLP

By: _____/s/ Todd Wagnon_____
Michael Evan Jaffe (Bar # 88443)
Todd J. Wagnon  (Bar # 464287)
701 8th Street, N.W.
Washington, DC  20001
Ph:  (202) 508-4000
Fax:  (202) 508-4321
mjaffe@thelen.com
twagnon@thelen.com

Attorneys for Centex Construction, LLC,
successor by merger to Centex Construction Co., Inc.

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES, FOR THE USE OF NORMENT SECURITY GROUP, INC. | ) ) ) ) | |
| Plaintiff/Counterclaim Defendant, | ) ) ) | |
| vs. | ) ) ) | Case No. 05-CV-01715 (JMF) |
| TRAVELERS CASUALTY AND SURETY COMPANY AND CENTEX CONSTRUCTION CO., INC. | ) ) ) ) ) | |
| Defendant/Counterclaimant. | ) ) | |

| | | |
|---|---|---|
| CENTEX CONSTRUCTION LLC | ) ) ) | |
| Third-Party Plaintiff/ Counterclaim Defendant, | ) ) ) | |
| vs. | ) ) ) | |
| PCC CONSTRUCTION COMPONENTS, INC. | ) ) ) | |
| Third-Party Defendant/ Counterclaimant. | ) ) ) | |

| | | |
|---|---|---|
| PCC CONSTRUCTION COMPONENTS, INC. | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 06-CV-1085 (JMF) |
| vs. | ) ) ) | |
| ARCH INSURANCE CO., | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OF LAW IN SUPPORT OF
CENTEX CONSTRUCTION LLC'S
<u>MOTION TO STAY COUNT III OF PCC'S COUNTERCLAIM</u>**

Centex Construction LLC, successor by merger to Centex Construction Co., Inc. ("Centex"), by and through undersigned counsel, respectfully submits this memorandum of law in support of its Motion to Stay Count III of PCC Construction Component, Inc.'s ("PCC") Counterclaim Against Centex.

**I.      <u>Factual and Procedural Background</u>**

**A.      The Project**

On March 15, 2002, Centex was awarded a contract (the "Prime Contract") with the General Services Administration (the "Owner" or "GSA") for the construction of the E. Barrett Prettyman Courthouse Annex in Washington, D.C. (the "Project"). Thereafter, Centex entered into a subcontract with PCC whereby PCC was to supply and install the glass and glazing for the Project (the "PCC Subcontract"). PCC, in turn, entered into a subcontract with Norment Security Group, Inc. ("Norment") to supply the blast-resistant windows for the Project (the "PCC-Norment Subcontract"). As required by the Miller Act, 40 U.S.C. § 1331, *et seq.*, Centex obtained a Payment Bond written by Travelers Casualty and Surety Co. ("Travelers") for the benefit of project subcontractors and materialmen.

**B.      PCC's Counterclaim against Centex and Relevant Subcontract Terms**

The present lawsuit began when PCC's subcontractor, Norment, filed suit under the Miller Act against Travelers and Centex, alleging that PCC failed to pay Norment amounts due under the PCC-Norment Subcontract. Centex has asserted third-party claims against PCC in the instant lawsuit for, *inter alia*, indemnification for the claim asserted by Norment, and PCC filed counterclaims against Centex. At issue in this motion, Count III of PCC's Counterclaim alleges

that PCC's contract performance was delayed by Centex and/or GSA and that Centex failed and refused to make payment on PCC's claim for additional costs in the amount of $277,520, alleged by PCC to have resulted from that delay. (PCC's Counterclaim Against Centex, ¶¶ 28-30.) Count III is the exact same claim as the one PCC submitted to Centex for its alleged extra costs associated with a time extension granted by GSA.

During the course of the Project, GSA granted Centex a time extension due to delays arising out of GSA's re-design work. Centex invited its subcontractors, including PCC, to submit cost proposals for their costs associated with this delay to be included in Centex's submission to GSA. In response, PCC submitted a cost proposal in the amount of $277,520 ("PCC's Claim). (Exhibit 1.) Centex included PCC's cost proposal in its submission to the GSA for compensation relating to the time extension.

Regarding claims arising out of acts or omissions of the GSA, the PCC Subcontract provides that, when PCC has a disputed claim "in any way relating to or arising from any act or omission of the Owner or involving the Contract Documents, [PCC] agrees to be bound to [Centex] to the same extent that [Centex] is bound to the Owner by the terms of the Contract Documents, and by any and all preliminary and final decisions or determinations made thereunder." (Exhibit 2, PCC Subcontract, Art. 12.B.) Thus, for any claim arising out of an act or omission of the GSA, as is the case with PCC's claim in Count III, PCC is expressly bound by the dispute resolution procedure to which Centex is obligated to the Owner under the Prime Contract, and PCC is expressly bound to the results of that procedure.

With respect to compensation for delays, the PCC Subcontract further provides, in pertinent part, that:

> "[s]hould [PCC's] performance of this Agreement be . . . delayed or disrupted by any acts or causes which would entitle [Centex] to an extension of time under the

> Contract Documents, [PCC] shall receive an equitable extension of time for the performance of this Agreement **but shall not be entitled to any increase in the Agreement Price or to damages or additional compensation** as a consequence of such delays or disruption, **unless Owner is liable and pays for such delays and disruptions**. Provided [PCC] complies with the notice requirements hereinafter set forth, [Centex] will pay [PCC] the amount allowed and paid such by Owner for [PCC's] delay or disruption."

(Exhibit 2, PCC Subcontract, Art. 3.E.) (emphasis added). Centex has initiated and followed through on the procedures for resolution of claims outlined in the PCC Subcontract with regard to PCC's Claim. However, to date, GSA has not made a decision regarding PCC's Claim, and Centex has not been paid by GSA for the additional delay costs submitted by PCC.

Per the terms of the PCC Subcontract described above, PCC must wait until the dispute resolution procedures with the GSA have been exhausted before it can assert a claim against Centex based on the Owner's delay. Under established law applicable in this circumstance, Count III should be stayed, pending the resolution of PCC's Claim pursuant to the dispute resolution procedures with the GSA as required by the PCC Subcontract. *See e.g., Crown Coat Front Co. v. United States*, 386 U.S. 503, 511-12 (1967) (contractor on government contract must seek relief under the administrative procedures provided in the contract before seeking relief in the courts); *Bethlehem Steel Corp. v. Grace Line, Inc.*, 416 F.2d 1096, 1106-1107 (D.C. Cir. 1969) ("[C]laims referable under the disputes clause for administrative adjustment cannot be entertained judicially until the required administrative procedures have been exhausted.").

**II.    Argument**

This Court has the authority stay an action or claim pursuant to its inherent power to control its docket. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 n. 23 (1983). The Court should stay Count III of PCC's counterclaim because, on its face, the PCC Subcontract requires PCC to exhaust the contractual dispute resolution procedures before

asserting its claim in this forum, and PCC has failed to exhaust the contractually mandated dispute resolution procedures.

Count III of PCC's Counterclaim is not properly before the Court as PCC has failed to exhaust its contractual remedies. PCC agreed in the PCC Subcontract to follow the dispute resolution procedure set forth therein. PCC's claim in Count III directly arises from an act or omission of GSA, and the PCC Subcontract explicitly sets forth the procedures for resolving claims arising from any act or omission of GSA or involving the Contract Documents. With respect to the amounts claimed in Count III, PCC is "bound to Centex to the same extent that [Centex] is bound to the Owner by the terms of the Contract Documents, and by any and all preliminary and final decisions or determinations made thereunder." (Exhibit 2, PCC Subcontract, Art. 12.B).

Courts have consistently held that "claims which are adjustable under contractual provisions must be submitted for the administrative determinations prescribed by the contract." *E.g., Bethlehem Steel*, 416 F.2d at 1102 (D.C. Cir. 1969); *see also Humphreys & Hardin, Inc. v. Pittsburgh-Des Moines Steel Co.*, 397 F.2d 227, 230-31 (4th Cir. 1968) (upholding district court ruling that subcontractor was required to abide by administrative remedies contained in the prime contract and noted in the subcontract).

The case of *Seal & Co., Inc. v. A.S. McGaughan Co.*, 907 F.2d 450, 454-55 (4th Cir. 1990) is particularly instructive. In *Seal*, the Fourth Circuit held that language strikingly similar to that contained in the PCC Subcontract served to incorporate the dispute resolution provisions of the prime contract where the government's acts or the contract documents were involved. Accordingly, the Fourth Circuit reversed the lower court's denial of the general contractor's motion to stay the subcontractor's suit pending exhaustion of the prime contract's dispute

resolution procedure. *See Seal*, 907 F.2d at 455. Because the subcontract expressly incorporated the prime contract's dispute resolution procedures, the court held that the parties were contractually bound to exhaust those procedures. *See id.*

The language in the PCC Subcontract is even more explicit than that cited by the Fourth Circuit in *Seal*. The PCC Subcontract specifically mandates that PCC submit its claims involving the GSA to Centex to be passed through to GSA. (Exhibit 2, PCC Subcontract, Art. 12.B(1).) Upon submission of its claim, Centex has the option of presenting the claim to GSA in Centex's name or authorizing PCC to present it to GSA. (*Id.*) The PCC Subcontract recognizes that PCC is bound to Centex to the same extent that Centex is bound to the Owner by the terms of the Contract Documents and by any decisions made thereunder. (*Id.*) Moreover, the PCC Subcontract explicitly conditions payment for additional costs that PCC alleges were caused by the GSA on Centex's receipt of payment from GSA. (Exhibit 2, PCC Subcontract, Art. 3.E).

The purpose of requiring a subcontractor to pass through claims to be handled in accordance with the contractual disputes clause is to require consistent resolution of claims. Judge Posner explained the rationale behind such clauses as follows:

> When a subcontractor incurs an additional expense as a result of a change order issued by the owner, or some other change in circumstances for which the owner is responsible, the prime contractor, naturally, does not want to have to reimburse the subcontractor out of its own pocket, but instead wants the owner to bear the expense. To this end, the disputes clause in the contract between [the contractor] and [the subcontractor] provided that in the event of a dispute between the parties that involved the owner, [the subcontractor] would be bound by the determination of responsibility made in accordance with the procedures set forth in the [prime contract].

*Moretrench Am. Corp. v. S.J. Groves & Sons Co.*, 839 F.2d 1284, 1285 (7th Cir. 1988). Requiring a subcontractor to await exhaustion of its contractual remedies avoids inequities and wasted resources.

The parties to the instant dispute protected against such a result by agreeing that any disputes involving acts or omissions by GSA or the Contract Documents be subject to a contractual dispute resolution process delineated by the PCC Subcontract. This process does not leave PCC without a remedy. As per the dispute resolution provisions of the PCC Subcontract, Centex is currently pressing PCC's Claim with the GSA. GSA has not reached a decision regarding PCC's Claim, and PCC is contractually bound to wait for resolution of that claim pursuant to that dispute resolution process with the GSA before it can assert Count III against Centex in this forum. Accordingly, until that dispute resolution process is complete, PCC's Claim should not be heard by this Court. *See Seal*, 907 F.2d at 455; *Bethlehem Steel*, 416 F.2d at 1106 (claims referable under the disputes clause for administrative adjustment cannot be entertained judicially until required administrative procedures have been exhausted).

Indeed, pursuant to Article 12 of the PCC Subcontract, PCC explicitly agreed to stay any lawsuit that Centex contends arises from an act or omission of GSA or involves the Contract Documents until the contractual dispute resolution procedures are exhausted. (Exhibit 2, PCC Subcontract, Art. 12.B(2)).

Centex has notified PCC that it contends Count III arises from an act or omission of GSA and involves the Contract Documents and must be stayed pending resolution of the claim with the GSA. PCC agreed to abide by this contractual provision, and is now bound to comply with it. PCC, however, refused to consent to the stay. Accordingly, the Court should order the stay of Count III pending resolution of PCC's Claim with the GSA.

**III.     Conclusion**

Based on the foregoing, Centex respectfully requests that the Court stay Count III of PCC's Counterclaim.

Date:  February 12, 2007

Respectfully submitted,

THELEN REID & PRIEST LLP

By:     /s/ Todd Wagnon
Michael Evan Jaffe (Bar # 88443)
Todd J. Wagnon  (Bar # 464287)
701 8th Street, N.W.
Washington, DC  20001
Ph:  (202) 508-4000
Fax:  (202) 508-4321
mjaffe@thelen.com
twagnon@thelen.com

Attorneys for Centex Construction, LLC,
successor by merger to Centex Construction Co., Inc.