UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES, FOR THE USE OF NORMENT SECURITY GROUP, INC.<br><br>　　　Plaintiff/Counterclaim Defendant,<br><br>vs.<br><br>TRAVELERS CASUALTY AND SURETY COMPANY AND CENTEX CONSTRUCTION CO., INC.<br><br>　　　Defendant/Counterclaimant. | Case No. 05-CV-01715 (JMF)<br><br>Judge John M. Facciola |
| CENTEX CONSTRUCTION LLC<br><br>　　　Third-Party Plaintiff,<br><br>vs.<br><br>PCC CONSTRUCTION COMPONENTS, INC.<br><br>　　　Third-Party Defendant. | Consolidated with: |
| PCC CONSTRUCTION COMPONENTS, INC.<br><br>　　　Plaintiff,<br><br>vs.<br><br>ARCH INSURANCE CO.,<br><br>　　　Defendant. | Civil Action No. 06-CV-1085 (JMF)<br><br>Judge John M. Facciola |

**AMENDED THIRD-PARTY COMPLAINT AGAINST
<u>PCC CONSTRUCTION COMPONENTS, INC.</u>**

DC #346081 v1

Defendant, Centex Construction, LLC successor by merger to Centex Construction Co., Inc., n/k/a Balfour Beatty Construction ("Centex"), by undersigned counsel, asserts this amended third-party complaint against PCC Construction Components, Inc ("PCC") and states as follows:

1. This Court has supplemental jurisdiction over this claim pursuant to 28 U.S.C. §1367.

2. On or about March 15, 2002, Centex entered into a written contract with the United States of America, acting by and through the General Services Administration, for construction of the E. Barrett Prettyman Courthouse Annex in Washington D.C. (the "Project"). Centex obtained a Payment Bond written by Travelers Casualty and Surety Company ("Travelers") for the benefit of project subcontractors and materialmen as required by the Miller Act, 40 U.S.C. §1331 *et seq.*

3. In the course of performing the work on the Project, Centex entered into a subcontract ("PCC Subcontract") with PCC for glass and glazing work on the Project. PCC in turn entered into a subcontract ("Norment Subcontract") with Norment Security Group, Inc. ("Norment"), pursuant to which Norment was to supply blast resistant and ballistic windows for the Project.

4. Norment filed a lawsuit in this Court against Centex and Travelers alleging that PCC has failed to pay Norment amounts due under the Norment Subcontract, and seeking payment of those amounts pursuant to the Miller Act payment bond or under a theory of quantum meruit against Centex.

5. Norment also sought the alleged unpaid amounts due under the Norment Subcontract in an arbitration against PCC. In that arbitration, PCC and Norment entered into an Agreement for Consent Award and Mutual Partial Release wherein PCC acknowledged that it

did not pay Norment $432,187.11 owed as part of the contract price under the Norment Subcontract and $64,302.86 for agreed extra work.

6. Norment agreed to pursue collection of that unpaid contract balance and agreed extra work in the Miller Act lawsuit against Centex and Travelers before pursuing collection from PCC.

## COUNT I – CONTRACTUAL INDEMNIFICATION

7. Centex incorporates by reference paragraphs 1-6 as if fully set forth herein.

8. The PCC Subcontract requires PCC to defend, indemnify protect and hold Centex harmless from the liability for any claims for labor performed or materials used or furnished through or under PCC for the Project for which PCC is liable due to its failure to adhere to the terms of the PCC Subcontract.

9. PCC failed to pay Norment as required by the terms of the PCC Subcontract.

10. If and to the extent Centex and/or Travelers has any liability to Norment under its Miller Act claim, Centex is entitled under the terms of the PCC Subcontract to indemnification, reimbursement and/or restitution from PCC up to the full amount of any judgment rendered in favor of Norment.

11. Further, PCC failed to defend Centex and its surety, Travelers, in the Miller Act lawsuit filed by Norment in accordance with its obligations under the PCC Subcontract.

12. Centex is entitled to indemnification, reimbursement and/or restitution from PCC for costs, including attorneys' fees, incurred by Centex relating to the defense of the Miller Act lawsuit filed by Norment.

## COUNT II – FRAUD

13. Centex incorporates by reference paragraphs 1-12 as if fully set forth herein.

14. PCC invoiced Centex for work performed by Norment, but failed to pay all amounts to Norment upon receiving payment from Centex. PCC's failure to pay such amounts is a breach of the PCC Subcontract.

15. PCC submitted payment applications to Centex that contained signed certifications that "to the best of [PCC's] knowledge, information and belief the Work covered by this Application for Payment has been completed in accordance with the Contract Documents that all amounts have been paid by [PCC] for Work for which previous Certificates for Payment were issued and payments received from the Owner, and that current payment shown herein is now due."

16. PCC's certifications on the payment applications relating to a material fact were false. PCC made the certifications with knowledge of the falsity or in reckless disregard of the truth, namely that Norment, at the time that PCC made the certifications, had not been paid as PCC certified, and that the certifications were false.

17. The payment applications containing false certifications are:

| Payment Application Date | PCC Representative Who Signed the Payment Application |
|---|---|
| June 20, 2003 | Vito John Germinario |
| July 18, 2003 | Vito John Germinario |
| August 20, 2003 | Vito John Germinario |
| September 15, 2003 | Leigh Press |
| October 16, 2003 | Leigh Press |
| February 20, 2004 | Leigh Press |
| June 15, 2004 | Leigh Press |

DC #346081 v1

| July 19, 2004 | Leigh Press |
| --- | --- |
| September 20, 2004 | Leigh Press |

18. PCC made the certifications with an intent to deceive and to induce reliance by Centex.

19. Centex reasonably relied to its detriment upon PCC's false and fraudulent certifications in making further payments to PCC.

20. Centex has been damaged as a result of PCC's false and fraudulent certifications.

### COUNT III – NEGLIGENT MISREPRESENTATION

21. Centex incorporates by reference paragraphs 1-20 as if fully set forth herein.

22. As a subcontractor to Centex, PCC owed a duty to Centex to exercise reasonable care in signing the certification in the payment applications. PCC made false representations regarding the status of payments for Work for which previous Certificates for Payment were issued and payments received.

23. PCC violated its duty to exercise reasonable care because it knew or should have known that it had not paid Norment all amounts paid to it for Norment's work and that, as such, the certifications were false.

24. Centex reasonably relied to its detriment on the false information in the certifications in making further payments to PCC and has been damaged as a result of PCC's misrepresentations.

### COUNT IV – UNJUST ENRICHMENT

25. Centex incorporates by reference paragraphs 1-24 as if fully set forth herein.

DC #346081 v1

26. Centex conferred a benefit upon PCC by paying PCC for work performed by Norment, for which work PCC was obliged to pay Norment.

27. PCC failed to pay Norment for all of the work performed by Norment and for which PCC was paid by Centex.

28. Under the circumstances, it is inequitable for PCC to retain the benefit of Centex's payments in the amount of at least $432,187.11 for work performed by Norment but for which PCC did not pay Norment.

## COUNT V – BREACH OF CONTRACT

29. Centex incorporates by reference paragraphs 1-28 as if fully set forth herein.

30. As a subcontractor on the Project, PCC was required to coordinate its design and production activities with Centex and the other trades on the Project, including Centex's subcontractor supplying the precast concrete, Modern Mosaic Ltd. ("Modern Mosaic").

31. PCC failed to perform in accordance with its obligations, in that, *inter alia*, it failed to coordinate its work and the work of its subcontractor, Norment, with Centex and the other trades on the Project.

32. PCC's failure to perform caused Centex to incur additional management and administrative costs to address the coordination between PCC/Norment's work and the work of Centex and the other trades on the Project.

33. PCC's failure to perform also caused Modern Mosaic to incur additional costs relating to project administration, design detailing, plant downtime and production and installation of precast concrete for which Modern Mosaic has sought reimbursement from Centex. Centex in turn is entitled to indemnification, reimbursement and/or restitution from

PCC for these costs incurred due to PCC's failure to perform its obligations relating to the Project.

34. Norment has also asserted claims against Centex in the Miller Act lawsuit for alleged extra work relating to Modern Mosaic's precast panel design. Any alleged extra work relating to the precast panel design is the result of either Norment's or PCC's failure to coordinate Norment's work with Centex and the other trades on the Project, as required by the PCC Subcontract.

35. If and to the extent Centex is found to have any liability to Norment for these extra work claims in the Miller Act lawsuit, Centex is entitled to indemnification, reimbursement and/or restitution from PCC for up to the full amount of any judgment for these claims rendered against Centex and/or Travelers in favor of Norment.

36. Centex has also been damaged in the amount of at least $432,187.11 for amounts paid to PCC for work performed by Norment that PCC in turn failed to pay Norment in accordance with the PCC Subcontract. Centex is entitled to a repayment of all such funds.

37. Centex has been further damaged by PCC's failure to defend Centex and its surety, Travelers, in the Miller Act lawsuit filed by Norment in accordance with PCC's obligations under the PCC Subcontract.

### REQUEST FOR RELIEF

WHEREFORE, Centex prays judgment in its favor and against PCC on the above claims as follows:

a. For indemnification, reimbursement and/or restitution of the full amount of any judgment rendered in favor of Norment and against Centex and/or Travelers as Centex's surety plus costs, including attorneys' fees, relating to the defense of the lawsuit by Norment;

b. For judgment against PCC in the amount of at least $432,187.11, plus punitive damages in the amount of $1,000,000, or such greater amount as may be justified at trial, interest and attorneys' fees, due to its fraud;

c. For judgment against PCC in the amount of at least $432,187.11, plus interest and attorneys' fees, due to its material misrepresentations;

d. For reimbursement and/or restitution in the amount of at least $432,187.11, plus interest and attorneys' fees, for unjust enrichment;

e. For judgment against PCC in the amount of at least $790,887, plus interest and attorneys' fees, due to PCC's breaches of contract;

f. Interest, costs, disbursements, attorneys' fees; and

g. Such other and further relief as this Court deems just and proper.

Respectfully submitted,

THELEN REID BROWN RAYSMAN & STEINER LLP

By:    /s/ Todd J. Wagnon
Michael Evan Jaffe (Bar # 88443)
Todd J. Wagnon (Bar # 464287)
701 8th Street, N.W.
Washington, DC 20001
Ph: (202) 508-4000
Fax: (202) 508-4321
mjaffe@thelen.com
twagnon@thelen.com

Date: September 20, 2007

Attorneys for Defendant
Centex Construction, LLC, successor by merger to Centex Construction Co., Inc., n/k/a Balfour Beatty Construction